*In re* VER VAECKE'S ESTATE.

1. WILLS—WITNESSES—OPINION EVIDENCE—PROPER FOUNDATION— MENTAL COMPETENCY.

A witness may not give an opinion that testator was mentally incompetent to make a will until the facts within his knowledge and upon which he bases his opinion are given in evidence and prove to be of such character that the court can say he is justified in expressing an opinion.

2. SAME—MENTAL COMPETENCY—UNDUE INFLUENCE—GREAT WEIGHT OF EVIDENCE—NEW TRIAL.

In a will contest case, the verdict of the jury for contestants *held*, to be against the great weight of the evidence on the questions of mental incompetency and undue influence, and should have been set aside by the trial judge on proponent's motion for new trial.

Error to Wayne; Barton (Joseph), J.   Submitted April 28, 1921.   (Docket No. 3.)   Decided June 6, 1921.

For authorities discussing the general rules for determining capacity or incapacity to make a will, see notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

On the general rule as to admissibility of nonexpert opinion as to sanity and mental capacity, see notes in 38 L. R. A. 721; 39 L. R. A. 331.

Louise Billiet presented for probate the last will of Matheus Ver Vaecke, deceased. The will was allowed in the probate court, and Henry Ver. Vaecke and others appealed to the circuit court. Judgment for contestants. Proponent brings error. Reversed.

*Charles Bowles* and *John Loree,* for appellant.

*James H. Cullen* and *Keena, Lightner, Oxtoby & Hanley,* for appellees.

WIEST, J.   This is a contest over the will of Matheus Ver Vaecke, the proponent being Louise Billiet, a distant relative of the deceased wife of the testator and housekeeper and helper in his financial affairs for some years, the contestants being his children and grandchildren.   The contest was on the grounds of mental incompetency and undue influence.   The will was allowed in the probate court and contestants appealed, and upon the trial in the circuit before a jury there was a finding against the will.   Proponent brings the case here by writ of error, claiming the verdict was against the weight of the evidence, and assigns error upon the refusal of the court to grant a new trial upon that ground and alleges other errors.

The testator came to Detroit from Belgium in 1892, accompanied by his wife and eight children, and remained in Detroit for about two years, then with his wife and some of his children moved to the country and carried on truck farming until about 1907, when he returned to Detroit where his wife died in 1909. His wife was the active manager of their business affairs on account of his being illiterate and not familiar with the English language.   Investments were made in Detroit real estate.

Following the death of his wife testator gave his son Henry a power of attorney under which Henry collected rents, paid the taxes and looked after repairs,

turning what was left of the money over to testator. This continued for about four years, when testator made it known to Henry that he wanted to handle his own affairs and asked that the power of attorney be terminated. In answer to such request Henry told his father he would consider the matter, gave back some papers relating to the business and filed a petition in the Wayne probate court asking that a guardian be appointed for his father. Upon this application Henry was appointed guardian, the father not appearing at the hearing. About three weeks later the father petitioned the probate court to re-open the matter and a rehearing was had attended by attorneys representing the guardian and testator and an order made relieving testator from guardianship.

In 1912 Louise Billiet came to Detroit from Belgium, and was then about 39 years of age, and she took up housework and other work. Not being satisfied with conditions in living with his children, the testator went to live at the home of a friend in June, 1912, and in the fall of that year made a trip to Belgium. Upon his return from Europe he lived with his son Camille for a few months and then went to live in one of his own houses. Having renewed old acquaintance with Louise Billiet, he had her come to his house, where she did the housework and helped him repair his houses and aided him in the management of his property up to the time of his death.

Relations between testator and his children were not at all intimate after he commenced to live away from them. June 20, 1917, testator, accompanied by Louise Billiet, visited the law office of Clayton A. Powell, in Detroit, where the will in question was prepared and executed; Louise Billiet not being in the room with testator while he was directing the attorney with reference to the provisions of the will, and in preparing the will the attorney followed the direc-

tions of deceased. In the will testator devised and bequeathed to his housekeeper, Louise Billiet, all his household furniture and the greater part of his real estate. He also devised one-eighth part* of the remainder of his estate to the children of a deceased daughter, and the residue to his seven children, and provided the expense of his last illness and funeral expenses be paid from the property devised to Louise Billiet.

Twenty errors are assigned, but it will be necessary to consider only the refusal of the court to grant a new trial on the ground that the verdict was against the weight of the evidence. The record consists of 360 pages and is too long to be reviewed at length in this opinion, and we can do no more than briefly call attention to salient points.

The witnesses called by contestants were permitted, in some instances, over objection, to express opinions relative to testator's mental incompetency without stating sufficient facts to qualify them to do so and some were permitted to express opinions upon the question of undue influence in their judgment exercised by proponent. The rule is clear that a witness cannot give an opinion that the testator was mentally incompetent to make a will, until the facts within his knowledge and upon which he bases his opinion are given in evidence and prove to be of such a character that the court can say the witness is justified in expressing an opinion. *Hibbard* v. *Baker*, 141 Mich. 124; *Roberts* v. *Bidwell*, 136 Mich. 191. Taking the testimony of the witnesses for contestants, and giving the same full weight upon the question of the mental incompetency of testator discloses a case close to the border line of mental competency of testator.

The son Henry testified that he called on his father five or six times after Louise Billiet went there to live, and did not go oftener because he could see by

Miss Billiet's actions that he was not welcome; that there was nothing his father did to make him feel unwelcome; that in the summer of 1917 he met his father on the street occasionally and his father did not recognize him until he spoke to him, when he recognized him and was friendly; that "he seemed walking like a man in a dream and talking to himself like, mumbling to himself"; that when he talked to him about things that were going on, or about something witness had read in the newspapers his father took the wrong meaning and that formerly he had understood such things fairly well; that for several months before and after the date of the will the father gave him answers not pertinent to the subject the witness was talking about; that in 1913 he thought his father incompetent because he came to witness and said he was worried over the power of attorney he had given him and claimed he had been told he had signed everything over to witness, and upon being informed by witness that he ought to know better than that and that he would be on the square, the father replied, "Yes, I ought to know better than to believe them," and that was the reason he asked that a guardian be appointed for him; that he noticed some weakening of his father's mind during the last year or year and a half of his life, and he was also induced to file the petition for guardianship because he was fearful his father was going to sign something without knowing what it was, and from his experience with his father and in handling his business affairs for him he was of the opinion that his father could not handle them himself; that from the general manner of his father's appearance in the probate court when he was discharged from guardianship he was of the opinion his father was not as competent as formerly, and that his father there testified he had six houses when he only had five, al-

though he had six tenants in the five houses. The testimony of this witness upon the question of mental incompetency of the testator has been quite fully stated as it is fairly illustrative of that given by the other relatives and witnesses for contestants.

Adele Cools, a daughter of testator, testified that her father, while living with one of the sons, where she also lived in 1912, became very much dissatisfied with the meals and everything and he was permitted to go to market and buy the provisions but did not seem to be able to get the right change or know the value of money; that she was married in August, 1912, a few months after the father left the home of his son, and up to the time of her father's last sickness she never visited him although on friendly terms with him and gave as an excuse that her father had told her she would not be welcome to Miss Billiet and, therefore, he would rather not have her come; that the last two years of her father's life he was very forgetful, always asking for her house number, although he knew the street, but never came to see her; that his business matters were always taken care of by some one else; that he had no education; was easily influenced and had a poor memory; that during the last year of his life her father, in her opinion, was not able to comprehend the will he executed; that he was 79 years of age when he died and was incompetent because of his age, and having no education he had no mind to do business. Many disinterested witnesses called by proponent gave testimony based upon ample opportunity to judge the mental capacity of testator, and detailed circumstances falling within their observation showing that testator was mentally competent and had reason for making the will in question.

Considering the fact that this uneducated man steadily improved and conserved his property through his own management for several years before he made

his will, that he directed the attorney relative to the disposition he wanted to make of his property, and on that day the evidence shows was perfectly competent to make the will and that he had reason to feel his children had neglected him, and some of them had wronged him in trying to place him under guardianship, and that he had reason to feel grateful to proponent, and, giving all the weight to contestants' evidence that it is entitled to receive, we are of the opinion that the verdict of the jury was against the weight of the evidence and should have been set aside by the trial judge on that ground upon the motion made by proponent.

We have examined the evidence claimed to bear out the charge of undue influence and feel that, while it presents an issue for the jury along with the charge of mental incompetency, the verdict as to undue influence was also against the weight of the evidence.

For the error in denying the motion to set aside the verdict the judgment below is reversed and a new trial granted, with costs of this court to appellant.

STEERE, C. J., and FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.