*In re* HAYES' ESTATE.

GREEN *v.* WIGHT.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE.
   Judgment *non obstante veredicto* should be set aside, on review,
   if competent testimony was presented, which, construed in
   light most favorable to appellant, would support verdict of
   jury.

2. WILLS—DELUSIONS—UNDUE INFLUENCE.
   In will contest case, testator's ill will, if any, toward contestants,
   *held,* under record, to have been founded on facts and not on
   delusions or as result of undue influence.

3. SAME—OPPORTUNITY TO EXERCISE UNDUE INFLUENCE.
   Mere opportunity to exercise undue influence is insufficient to
   establish that it was exercised.

4. SAME—MENTAL COMPETENCY—OPINION EVIDENCE.
   In absence of corroborative testimony of direct probative value
   tending to establish mental incompetency, opinion testimony
   given by doctor, who had not attended testator for more than
   a year before or after making of will, that he was mentally
   incompetent, is insufficient to invalidate will.

5. SAME—EVIDENCE—APPEAL AND ERROR.
   Exclusion of testimony by lay witness that testator said he had
   hardening of arteries was not prejudicial error where said fact
   was not disputed and two physicians testified thereto.

6. SAME—CHANGE IN MENTAL CONDITION—WITNESSES—LAYING
   FOUNDATION—INDEFINITENESS.
   Rejection of testimony by lay witness in answer to question as
   to whether he had observed any change in proponent's mental
   condition in later years was not error, where proper foundation
   therefor was not laid, and question was too indefinite as to
   time.

On basis of facts or reasons for opinion as to mental condition
of testator, see annotation in 39 L. R. A. 319.

7. Same—Mental Capacity—Witnesses.

Capacity of testator to make will is not to be tested by ''change in mental condition'' in later years, and therefore rejection of testimony by lay witness in answer to question as to such change was not error.

8. Same—Undue Influence—Evidence—Declarations of Testator.

Declarations of testator to show effect of alleged undue influence are inadmissible until other competent proof of undue influence is produced.

9. Trial—Evidence—Collateral Matters.

Objection to question was properly sustained where matter referred to was collateral, remote, and immaterial.

10. Wills—Delusions—Mental Capacity.

Where record contains no definite statement of exact delusions or illusions of testator upon which contestants rely in asserting testamentary incapacity, trial court properly eliminated said element from case.

11. Same—Evidence—Mental Capacity.

Exclusion of doctor's answer to question as to whether he thought testator, who was 80 years of age, had impaired mentality, was not error, since testamentary incapacity is not to be inferred from that fact.

12. Same—Evidence—Mental Capacity—Appeal and Error.

Error, if any, in exclusion of doctor's answer to question as to whether he thought testator had impaired mentality, was not prejudicial, where he later testified that he did not think testator was mentally competent to make will at time it was made.

13. Same—Undue Influence—Mental Capacity—Delusions—Judgment Non Obstante Veredicto.

Where, in will contest case, contestants' claims of undue influence, mental incompetency, and delusions were not supported by any competent evidence, trial court properly entered judgment *non obstante veredicto* for proponent.

Error to Eaton; McPeek (Russell R.), J. Submitted June 11, 1931. (Docket No. 139, Calendar No. 35,788.) Decided October 5, 1931.

R. Ellen Green presented for probate the last will of Henry H. Hayes, deceased. Clara E. Wight and another, heirs at law, appealed from order admitting will to probate. Judgment for plaintiff *non obstante veredicto*. Defendants bring error. Affirmed.

*Kelley, Sessions & Warner* (*A. M. Cummins*, of counsel), for plaintiff.

*Ira A. Beck, Joseph L. Hooper* and *Rosslyn L. Sowers*, for defendants.

North, J. Henry H. Hayes died April 6, 1930, a few days before his 84th birthday. On September 22, 1927, he made a will disposing of his estate consisting of real and personal property somewhat in excess of $190,000. He willed it all to the proponent, R. Ellen Green, to whom he referred in his will as "my friend, who has lived in my home for many years." The will was allowed in the probate court. On appeal to the circuit court a jury disallowed the will; but on proponent's motion the circuit judge entered a judgment *non obstante* sustaining the will. Contestants who assert invalidity on the grounds of undue influence, mental incompetency and delusions have appealed.

Testator was never married. Prior to 1866 his parents located on a farm near Charlotte in Eaton county, and there he resided until his death. His father, Calvin Hayes, predeceased testator's mother, who died in 1896. Testator survived his two brothers and three sisters, so that at his death none of his family survived. The two contestants are his nearest of kin. One, Fred H. Carpenter, is the son of Lizzie Carpenter, a deceased sister of testator; the other contestant, Clara E. Wight, is a daughter

of Howard Hayes, a deceased brother. Proponent was never married. She began rendering services as a domestic in the Hayes household when she was 16 years of age, approximately 60 years ago. She continued there to the time of testator's death. In later years she obviously acted as housekeeper and became the manager of the household affairs in general. Even prior to the death of testator's mother, in 1896, who was not a robust woman and was ill for some time, Miss Green assumed quite complete control of the household affairs. After Mrs. Hayes' death testator and Miss Green occupied the farm home together until his death.

If competent testimony was presented at the trial of this case, which, construed in the light most favorable to contestants would support the verdict of the jury, the judgment *non obstante veredicto* entered by the trial judge sustaining the will must be set aside. However, a painstaking review of the record has brought us to the conclusion that the judgment entered should be affirmed.

Without including every detail, the incidents on which contestants rely in support of their claim of lack of testamentary capacity are: (1) That, by reason of her intimate and confidential associations with testator, proponent procured the execution of the will by undue influence; that her influence in this direction is indicated by deprecating statements made by proponent in testator's presence about his brothers and sisters, as well as his parents, to all of whom she referred as the "Hayes tribe;" that proponent accused the mother of contestant Fred H. Carpenter of being "lazy, tricky, and sly;" and referred to contestant Carpenter himself as an upstart, who visited the home of testator as a spy; and said the Carpenter family would get nothing out of

the Hayes estate. (2) That proponent as a constant companion of testator took an active part, perhaps an unusually active part, in the management of his business affairs, even to the extent of seeming to control his judgment at times. (3) That with his advancing years testator became afflicted with arteriosclerosis, chronic nephritis, and heart trouble, and that his physical ailments impaired his mentality and rendered him susceptible to proponent's undue influence.

Aside from the testimony of deceased's attending physicians, the record discloses that a very large part of the testimony had to do with the ill feeling of proponent toward the members of the Carpenter family. This arose incident to the settlement of the estate of Mrs. Laura Henry, deceased, who was a sister of testator. Miss Green claimed that for a number of years she had rendered service to Mrs. Henry in the care of both her person and her property. A comparatively short time before her death Mrs. Henry went from Michigan to Colorado, where the Carpenter family resided. Thereafter Mrs. Henry evidently was in the charge and care of the Carpenters. She made a will by which her property was left to contestant Fred H. Carpenter and his mother, with the exception of a bequest to Henry Hayes in the amount of 25 cents. This will was probated in Colorado. Miss Green's claim for services amounting to $665 was submitted but disallowed. Both proponent and testator were very much incensed by this nonpayment of the former's claim against the Henry estate, and without question they charged this result to the members of the Carpenter family. The father of Fred H. Carpenter, as a witness for contestants, testified in this case that in June, 1927, when visiting testator at his

home he informed testator "I am responsible for whatever was done in that case." It is fair to conclude from this record that testator's feeling towards the Carpenters incident to the disposition made of his sister's estate was not rendered at all friendly by the fact that he was left a bequest in the amount of 25 cents. We have alluded to these details because they conclusively show that if Mr. Hayes had any ill will toward the members of the Carpenter family, such ill will was founded on facts, and not on delusions nor was it the result of undue influence. A careful review of this record does not disclose any other testimony tending to establish contestants' claims of undue influence or delusions. The most that can be said of this record is that by reason of their close relationship in the same household proponent had the opportunity to attempt to exercise any undue influence. This is not sufficient. *In re Carlson's Estate,* 218 Mich. 262; *Hoagland* v. *Reedy,* 237 Mich. 691. As noted, Miss Green, entering the Hayes household in the early years of her life as a domestic, during all the intervening years rendered continuous, faithful service incident to the discharge of the farm household duties and she also worked out of doors. There is no testimony which would justify an inference of immoral relations between proponent and testator. At the time of making his will testator had no immediate blood relatives. The contestants, a nephew and a niece, were mature people established in life. So far as the record discloses, testator was under no obligation to either of them, to say nothing of an apparent justification for unfriendly feelings towards the members of the Carpenter family. On the other hand, the beneficiary's attitude and relation towards testator for practically all of his life had been

more that of a sister actively interested in his welfare. In the last days of testator's life the attending physician sought to have Mr. Hayes consent to securing the services of a nurse to care for him. This he refused to do, but said: "Ellen has been in my home for upwards of 50 years and knows how to take care of me and she is a good enough nurse for me." Surely it cannot be said that by leaving his property to proponent the testator did a thing that was contrary to or in any way in conflict with natural justice.

Our review of the record satisfies us that, aside from the testimony of Dr. Huber, there is no showing of mental incompetency; and further, that the will ought not to be set aside by reason of anything to which the doctor testified. His testimony is only to the effect that at 80 years of age Henry H. Hayes was to some extent suffering from some of the ills to which human flesh is heir, especially at that time of life. The doctor attended deceased three times in 1925, and once in May, 1926. He did not treat him again until April 6, 1929. As noted, the will was made in September, 1927, and death occurred in April, 1930. The doctor also testified that on other occasions he had seen deceased on the streets of Charlotte and elsewhere. While he testified that the diseases with which testator was afflicted were progressive in nature, he admitted that he thought practically everybody above 75 years of age has some degree of arteriosclerosis and is more or less affected by senility. But it appears from the record that as late as March, 1930, testator was physically able to call at the doctor's office; and the doctor testified that in the later years of his life testator could carry on a connected conversation. In response to the usual hypothetical question as to tes-

tator's mental competency to know and understand the nature of the transaction involved in making his will, the doctor answered: "I don't think he was." But on cross-examination this witness admitted having stated to at least four persons that there was no question in his mind but "what Henry Hayes was mentally competent up until a short time before his death;" and "Well, I think I did state that I thought Henry Hayes was competent to transact business. I have stated— I did state that he was apparently a man of strong will power." In the absence of corroborating testimony of direct probative value tending to establish mental incompetency, opinion testimony of the character given by Dr. Huber is not sufficient to invalidate a plain, simple will of the type here involved. This will was prepared in the office of a reputable attorney after a private consultation with testator. The attorney had known testator for 25 years and had rendered service to him, "in relation to real estate, loans, and mortgages." Appellants stress the fact that Miss Green accompanied testator to the attorney's office. We think this circumstance is of no importance. For years these two seem to have been quite constantly together. The undisputed record shows that Miss Green left the attorney's office "before the will was talked about," and that "the will was not mentioned or discussed while she was there." Aside from the doctor's opinion testimony, we think this record is barren of competent testimony tending to establish that at the time this will was executed the testator was either mentally incompetent or that the will was the product of proponent's undue influence.

Other assignments of error reviewed in appellants' brief have to do with the following:

(A) The circuit judge struck out of the record the following testimony of a lay witness: "Yes he (testator) said, I have hardening of the arteries."

(B) Proponent's objection was sustained to the following question to a lay witness: "As to his (testator's) mental condition, did you observe any change in his mental condition (in later years)?"

(C) Proponent's objection was sustained to the following question to the same witness: "Did you have any talk with Henry (Mr. Hayes) relative to Mrs. Wight, his niece, * * * within the last four or five years previous to his death—six or eight years—any expression of his with regard to her?" Counsel stated to the trial court this question was propounded particularly for the purpose of showing his (testator's) attitude toward his niece, who is one of the contestants.

(D) Proponent's objection was sustained to testimony of the father of contestant Carpenter as to a conversation between himself and testator in 1922 relating to the latter's refusal to permit burial of the witness' deceased wife, who was testator's sister, on the Hayes burial lot.

(E) The trial court also sustained proponent's objection to the following question to Dr. Huber: "Did you think that Henry Hayes, in 1926, when you treated him, had an impaired mentality?"

The trial court allowed contestants large latitude in examining their witnesses. We think there was no prejudicial error in the rulings above noted. As to the ruling in paragraph A, two physicians testified that testator had hardening of the arteries. This was not disputed, and in reviewing we have assumed such to be the fact. Assuming the lay witness was competent to answer the question quoted above in paragraph B, a proper foundation for the

question was not laid (*In re Ver Vaecke's Estate,* 214 Mich. 281; *In re Murray's Estate,* 219 Mich. 70, and *In re Lembrich's Estate,* 243 Mich. 39), and "a change in mental condition" is not the test of testamentary capacity. This ruling might well be sustained also on the ground that the question was too indefinite as to time. The ruling noted in paragraph C above was proper because the record then contained no proof of undue influence, and until other competent proof of any undue influence is produced declarations of the testator to show the effect of alleged undue influence may be held inadmissible. *In re Allen's Estate,* 230 Mich. 584. This ruling was also justifiable because the question was too indefinite. The burial incident noted in paragraph D above happened in 1922. It was a collateral matter, too remote, and, we think, immaterial. In appellants' brief it is asserted that the testimony excluded by the ruling in paragraphs C and D was material to alleged delusions. As to paragraph C this claim was not made in the circuit court; and as to paragraph D it may be noted that testator by his will in 1927 did not disinherit his sister. She had died nearly five years before. Further, nowhere in the record is there a definite statement of the exact delusions or illusions upon which contestants rely in asserting testamentary incapacity; and we think the trial court was fully justified in eliminating this element from the case in his charge to the jury and by his subsequent judgment *non obstante veredicto.* The answer to the question in paragraph E was properly excluded. It perhaps would be unusual if Henry Hayes, in 1926, then 80 years of age, did not have a somewhat "impaired mentality," but testamentary incapacity is not to be inferred from that fact, if it was a fact. The

doctor later testified he did not think testator in 1927 was mentally competent to make this will. Had the first ruling been wrong it would not have been prejudicial in view of the subsequent answer.

As noted above, our review of this record brings the conviction that the action of the circuit judge in entering a judgment for proponents *non obstante veredicto* was proper. It is affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.