*In re* WALLACE'S ESTATE.

1. WILLS—POISONS—PREJUDICE—MENTAL COMPETENCY—EVIDENCE.
    In will contest it was not reversible error to admit testimony concerning attempt by contestants' brother to poison testator, their uncle, where it appears to have had a distinct bearing on his state of mind in leaving his entire estate to charitable institutions and invalidation of will was sought because testator was of weak and infirm mind and was purposely prejudiced against his blood relatives.

2. SAME—MENTAL COMPETENCY—UNDUE INFLUENCE—PREVIOUS LITIGATION—EVIDENCE.
    Testimony as to litigation with testator over certain property in which testator and a contestant, a niece, each had an interest and which litigation had been instigated by con-

testant about a year before will had been executed was admissible in contest of will where invalidation was sought because of mental incompetence of testator and undue influence.

3. SAME—IMMATERIAL TESTIMONY.

In will contest wherein an attorney was a witness, admission of preliminary testimony indicating the extent of his practice, if immaterial, was not of such importance as to require setting aside verdict for proponent and granting a new trial.

4. SAME—MENTAL COMPETENCY—NONMEDICAL OPINION.

A nonmedical opinion concerning the mental competency of a testator may be received when a proper foundation has been laid.

5. SAME—MENTAL COMPETENCY—NONMEDICAL OPINION—BASIS.

Exclusion of opinion of nonmedical witness on mental competency of testator was proper where such witness had testified as to various physical ailments of testator but had not testified to facts and circumstances which would tend to show any unsoundness of mind.

6. SAME—DISINHERITANCE OF RELATIVES—POISONS—LITIGATION—EVIDENCE.

Admission of documentary evidence concerning an attempt to poison testator and his employment of an attorney in litigation with contestants over property matters was proper to show testator's reason for disinheriting contestants, his niece and nephew.

7. SAME—UNDUE INFLUENCE—EVIDENCE—INSTRUCTIONS.

In will contest, court's characterization of contestants' claim of undue influence as ''just plain ridiculous'' was not reversible error where there was no proof of undue influence and charge as a whole was proper; notwithstanding judicial approval of such language is not given.

8. SAME—MENTAL COMPETENCY—INSANE PERSONS—INSTRUCTIONS.

Where will was contested on ground that testator was mentally incompetent and testator was adjudged insane two years after will was made, court properly charged jury that issue was not whether testator was insane when will was made but whether or not he was then mentally incompetent to execute will.

9. SAME—INSANE PERSONS—INSTRUCTIONS.

In will contest, the contestants may not complain of charge on question of testator's insanity where inferentially, at least, they might be benefited by the charge.

10. TRIAL—INSTRUCTIONS—CREDIBILITY—WEIGHT OF EVIDENCE.
    Instruction in will contest that physician's opinion as to mental
    competency of testator, where the question of insanity was not
    involved, was entitled to no greater consideration than that
    of a layman who had equal facilities for observation was
    proper where court had already accurately stated that jurors
    were sole judges of the credibility of witnesses and the weight
    to be given the evidence.

11. EVIDENCE—SCIENTIFIC AND OTHER TESTIMONY.
    In a conflict between scientific and other testimony, the judge
    cannot decide for the jury that one witness is more to be re-
    garded than another.

12. WILLS—MENTAL COMPETENCY—GREAT WEIGHT OF EVIDENCE.
    Verdict for proponent in contest of will on ground testator was
    mentally incompetent was not against the great weight of the
    evidence.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted October 5, 1945. (Docket No. 49, Calendar
No. 42,981.) Decided December 3, 1945.

In the matter of the estate of William Wallace, de-
ceased. Leonard Kloet presented for probate the last
will and testament of William Wallace, deceased.
Gladys Clarage and Wallace Henschel objected
thereto. On trial in circuit court, the instrument was
allowed as last will and testament of William Wallace.
Contestants appeal. Affirmed.

*Victor E. Bucknell* and *Justin Brocato,* for contest-
ants.

*Reint P. Schuur* and *Fox & Fox,* for proponent.

BOYLES, J. This is a will contest. William Wal-
lace, the testator, died December 28, 1943, at the age
of 81 years, leaving an instrument purporting to be his
last will and testament bearing date June 3, 1941.
This instrument left all of his property to the Bronson

Methodist Hospital of Kalamazoo and the Kalamazoo Home for the Aged, equally. His next of kin at the time of his death were Wallace A. Henschel, nephew, and Gladys Henschel Clarage, niece, who as contestants filed objections to the admission of the alleged will to probate. The contest was heard by a jury in circuit court and a verdict returned that the instrument was the last will and testament of William Wallace. From the judgment entered on the verdict, the contestants appeal.

The grounds urged for reversal and a new trial are (1) claimed errors in admitting testimony, (2) errors in charging the jury, and (3) that the verdict was against the great weight of the evidence.

1. Admission of testimony. Appellants claim prejudicial error was committed in admitting testimony of an alleged attempt by one Glenn Henschel, a brother of the contestants, to poison William Wallace. Approximately four years before the will was executed William Wallace caused the arrest of said Glenn Henschel on the charge of attempted poisoning. After he was incarcerated in the county jail on the charge, Glenn Henschel committed suicide. Appellants claim that the testimony relating to this entire matter was inadmissible inasmuch as Glenn Henschel had no interest at issue in the will contest. It is apparent from the record that Mr. Wallace was justified in causing the arrest of his nephew Glenn Henschel on a charge of attempting to kill him by placing cyanide in his drinking water. Glenn Henschel and his sister Gladys Henschel Clarage lived together on a nearby farm at that time. On direct examination Gladys Henschel Clarage had testified in detail as to family history and family relationship. Glenn Henschel and the two contestants were the only heirs-at-law of Mr. Wallace at that time and all of them would at that time have benefited by his death if he had died intestate. He often referred to them in the same family connec-

tion.   On one occasion he said "There is the ones (his relatives) I am afraid of."   A witness testified:

"It seems as so [though?] he told me that one of them tried to poison him once, something like that."

An attorney who was acting as such in certain earlier litigation involving the Wallace family testified that Mr. Wallace said:

" 'I don't want to have any more trouble with my relatives.'   He said 'They have sued me and they have caused me a good deal of sorrow and anxiety and I don't want, Mr. Schaberg, to have any trouble over a bed or silverware, and [if?] it doesn't make any great difference to you, I would like to let the matter drop.' He said 'I have been very much grieved over the relationship between us and these things, and I don't want just the matter of a bed or silverware to enter into it, and I rather not have anything more to do with it.' "

Another witness testified:

"He talked about his relatives at that time they tried to poison him.   Yes, that is what he did."

As usual in trials over will contests, much liberality was permitted by the court in receiving any testimony having a remote bearing on issues of mental incompetence or undue influence.   In this case Gladys Henschel Clarage contests the will on the ground, among others, that "the said William Wallace was of weak and infirm mind, and was purposely and deliberately prejudiced against his blood relatives and led to believe various stories and representations that were purposely circulated by the agents, employees and other persons desiring to be benefited by the gift to the Kalamazoo Home for the Aged."

Under the circumstances of the case, and in view of the issues raised by said contestant, this testimony had a distinct bearing on the state of mind of Mr.

Wallace. See *In re Barth's Estate*, 298 Mich. 388. It was not reversible error to admit the testimony concerning Glenn Henschel.

Appellants claim that the court erred in receiving testimony regarding litigation over certain property in which Mr. Wallace and Gladys Henschel Clarage each had an interest. This litigation occurred only about a year before the will was executed. There was evidence that the litigation against Mr. Wallace was inspired by Gladys Henschel Clarage. Their interests were adverse. The testimony was admissible.

Appellants also urge reversal on the ground that an attorney, Mr. Schaberg, who was a witness in the case, was permitted to state to the jury the names of eight corporations he represented. The testimony was preliminary, and doubtless just as material as similar testimony received without objection by contestants that Mr. Schaberg had practiced law 40 years and had held office as city attorney and circuit court commissioner. If immaterial, the testimony was not of such importance as to require that the verdict of the jury be set aside and a new trial granted.

Appellants seek reversal on the ground that the court was in error in excluding the opinion of Gladys Henschel Clarage on direct examination as to the mental condition of William Wallace. The ruling was correct, although for a reason not given by the court. Gladys Henschel Clarage, after testifying to family history and occurrences, testified that her mother had taken care of Mr. Wallace during sicknesses, that he had two ruptures, kidney trouble, "a number of things." The witness was then asked:

"*Q.* That [What?] gave you that conclusion that he was unwell? What about his mental condition?

"*Mr. Schuur:* I object to that, if the court please, as incompetent. I object to that as calling for her conclusion. That is the function of the jury, to determine

his mental condition. If she knows anything or observed things—

"*The Court:* You are inquiring about—if by that question you mean to inquire from a lay witness whether or not the deceased, at the time you are talking about, was mentally diseased, was insane, then the objection must be sustained."

The question, although improperly phrased, doubtless was meant to refer to the mental competency of Mr. Wallace (rather than insanity), concerning which a nonmedical opinion may be received when a proper foundation has been laid. *In re Moxon's Estate,* 234 Mich. 170. However, the ruling excluding the opinion was proper on the ground that the witness at that time had not testified to facts and circumstances which would tend to show any unsoundness *of mind,* hence no foundation had been laid for receiving the opinion of the witness. *O'Connor* v. *Madison,* 98 Mich. 183; *Roberts* v. *Bidwell,* 136 Mich. 191; *In re Ver Vaecke's Estate,* 214 Mich. 281; *In re Walker's Estate,* 270 Mich. 33. We will have occasion to refer again to the question of *insanity* in discussing the charge to the jury. In that connection it is important to note that the contestants in this case made no claim that Mr. Wallace was insane, or suffering from insane delusions.

The court admitted some documentary evidence concerning the attempt to poison him, and also that William Wallace had employed an attorney in the earlier litigation over property matters, all of which was received as a part of the chain of trouble and legal difficulties between William Wallace and the contestants, and in answer to their claim that Mr. Wallace had no reason for disinheriting them. Under the circumstances of the case the evidence was admissible.

2. Claimed errors in charging the jury. The court charged the jury in part as follows:

"Suppose we go back to the undue influence. The charge (by contestants) is that he was so unduly influenced or unduly influenced by those agents, servants, employees and others to such an extent as to void and render invalid and unlawful said instrument as the last will and testament of the decedent; that the said instrument in writing was not the free and voluntary act of the said William Wallace on the date of said purported last will.

"Keep that in mind, if you will, because in a moment I will explain to you how you must wholly disregard that. It is entirely out of the case now. The record, as we say, is absolutely barren of any testimony whatever to support that claim. The claim is in fact abandoned.

"'Third, that at the time of the alleged execution of said last will and testament the said William Wallace was of weak and infirm mind, and was purposely and deliberately prejudiced against his blood relatives and led to believe various stories and representations that were purposely circulated by the agents, employees, and other persons desiring to be benefited by the gift to the Kalamazoo Home for the Aged.'

"In the light of the evidence, that charge is just plain ridiculous. It is not supported by anything at all in this record, and it is not even relied upon now. It is abandoned."

Appellants urge that the characterization of their said claim as being "just plain ridiculous" was reversible error. Without expressing judicial approval of the language used, the record compels us to reach the same conclusion. The charge as a whole, on the question of undue influence, was proper. There was a complete absence of any proof of undue influence. We do not reverse on words picked at random from a charge which as a whole is proper.

Appellants seek reversal on the ground that the charge was repetitious and argumentative. The

court, after stating what the case involved and how it came into court, read to the jury the objections to admitting the will to probate as filed by the contestants, and confined the issue of fact to be decided by the jury as to whether William Wallace was mentally competent to make a will on the date it was executed. The court correctly charged that there was a difference between mental incompetence to make a will, and insanity. According to the record, Mr. Wallace was adjudged insane in 1943, two years after the will was made. The court properly charged the jury that the issue was not whether Mr. Wallace was "insane" in 1941, but that "your consideration in this case is limited to one question and one only, and that is the question of alleged mental incompetency at the time the will was made."

Later in his charge the court said:

"At the outset, as I have already explained to you or tried to, mental incompetency or mental incapacity to make a will does not necessarily involve insanity. A person may be mentally incompetent, may lack the mental capacity to make a will, and yet not be legally insane, not be a fit subject for the State hospital for the insane, not be such a person as physicians would certify ought to be confined because of insanity."

Appellants have no proper reason to complain of that charge on the question of insanity. Inferentially, at least, they might be benefited by the charge.

During the course of the trial the physician who had attended the "Wallace family" for about 20 years was asked certain questions and answered as follows:

"*Q.* On April 9, 1941, when you saw him at the Home for the Aged, would you say at that time that he was able to know those persons who would be the natural objects of his bounty and would know the nature and extent of his property?

"*A.*   I wouldn't consider him capable of determining the proper answers to anybody's questions.
*   *   *

"*Q.*   What would be your opinion, Doctor, as to whether or not he could or could not on June 3, 1941, know those who would be the natural objects of his bounty and know the nature and extent of his property?

"*A.*   Well, all I could say is this, that I would not consider him a fit person to make such declarations.

"*Q.*   You think if he made such declarations he would know who would be his relatives and friends?

"*A.*   Well, there is a possibility that he might, but I wouldn't consider his statements."

The answers were not responsive, and cannot be said to amount to a very satisfactory expression of an opinion as to mental incompetence to make a will. Appellants claim the court erred in charging the jury that the opinion of a physician as to mental competency, where the question of insanity was not involved, was entitled to no greater consideration than that of laymen who had equal facilities for observation. The charge was proper. The court had already accurately and correctly stated that jurors are the sole judges of the credibility of witnesses and the weight to be given the evidence, and that the court had nothing whatever to do with that.

"In a conflict between scientific and other testimony, the judge cannot decide for the jury that one witness is more to be regarded than another." *Watson* v. *Watson* (syllabus), 58 Mich. 507.

In *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276), as in the case at bar, no claim was made that the testatrix was *insane* at the time the will was made. The court said (p. 154):

"One other error needs mention.  The court instructed the jury that 'the opinion of physicians upon

questions of mental competency is entitled to greater weight than that of ordinary laymen.' This was error. There was no claim made by any one that the testatrix was insane. The questions to the physicians were addressed to their opinion of the mental capacity of the testatrix. The opinion of a physician as to mental competency, aside from the question of insanity, is entitled to no greater consideration than that of a layman having equal facilities for observation.''

See, also, *People* v. *Vanderhoof,* 71 Mich. 158, 173; *Anthony* v. *Cass County Home Telephone Co.,* 165 Mich. 388, 399.

We find that the charge as a whole was not repetitious or argumentative, that the jury was fully and accurately instructed as to the law applying to the issue in the case. The instructions given the jury were an accurate statement of the issue and of the laws applicable to trials of this nature.

3. A careful review of the record is convincing that the verdict was not against the great weight of the evidence. For a recent very similar case, see *In re Thayer's Estate,* 309 Mich. 473.

Affirmed, with costs.

STARR, C. J., and NORTH, CARR, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.