## *In re* NICKEL'S ESTATE.

1. EVIDENCE—HOSPITAL RECORDS—REGULAR COURSE OF BUSINESS.

   Admission in evidence of hospital records under statute relating to records made in the regular course of business is limited in that they are admissible for purpose of showing date of patient's entry and discharge and fact of his treatment, but not for showing merely hearsay statements (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

2. WILLS—MENTAL COMPETENCY—EVIDENCE OF SUBSEQUENT EVENTS.

   The admission of testimony as to events subsequent to execution of will is within the discretion of the court in determining question of testator's mental competency.

3. SAME—DECLARATION OF MENTAL INCOMPETENCY 18 MONTHS AFTER EXECUTION OF WILL.

   The mere fact that testator was declared mentally incompetent some 18 months after executing will in question would not be sufficient to prove lack of enough mental powers to execute will in question.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am. Jur., Hospitals and Asylums, § 6.

[1] Reports of accident as within statute providing for admissibility as evidence of records or entries in regular course of business. 144 A.L.R. 727, 731.

[1] Hospital chart or record, admissibility of. 75 A.L.R. 378; 120 A.L.R. 1124.

[2–8] 57 Am. Jur., Wills, § 63 *et seq.*

[2, 3] 57 Am. Jur., Wills, §§ 78, 104.

[2, 3] Remoteness affecting evidence as to testamentary capacity. 124 A.L.R. 433.

[4] 57 Am. Jur., Wills, § 127.

[4] Evidence other than testimony of subscribing witnesses to prove testamentary capacity. 63 A.L.R. 1195.

[5] 57 Am. Jur., Wills, § 91.

4. SAME—MENTAL COMPETENCY—TESTIMONY OF PHYSICIANS AND RELATIVES.

Where physician who attended testator 44 days after will was executed refused to say that testator was then mentally incompetent to execute it, although some 12 months later he made a diagnosis of senile dementia and another physician who made a similar diagnosis some 16 months later admitted he could not say whether testator was competent or not when will was executed and testimony of relatives showed he could recognize them, directed verdict for proponents on issue of his competency was proper.

5. SAME—MENTAL COMPETENCY—PRESUMPTIONS—BURDEN OF SHOWING INCOMPETENCY.

Mental competency on the part of a testator is presumed and the burden is on contestants to show that the testator was mentally incompetent to make a will (3 Comp. Laws 1929, § 14212).

6. SAME—MENTAL COMPETENCY—WEAKNESS OF MIND—FORGETFULNESS.

Weakness of mind and forgetfulness are not sufficient to invalidate a will if it appears that the testator's mind was capable of attention and exertion when aroused and was not imposed upon.

7. SAME—EXISTENCE OF TESTAMENTARY CAPACITY.

Since the weak have the same right as the prudent and strong minded to dispose of their property, if testamentary capacity exists the court will not undertake to measure its degree.

8. SAME—LACK OF PROOF OF MENTAL INCOMPETENCE—TIME—DIRECTED VERDICT.

Lack of proof of testator's mental incompetence on or near date of execution of the will in question is sufficient to justify direction of verdict for proponent.

Appeal from Genesee; Gadola (Paul V.), J. Submitted April 13, 1948. (Docket No. 15, Calendar No. 44,016.) Decided June 14, 1948.

In the matter of the estate of William J. Nickel, deceased. The proposed will of William J. Nickel, deceased, was contested on ground of mental incompetency. Contest certified to circuit court. Directed

verdict and judgment for proponent. Contestants appeal. Affirmed.

*Cook, Stipes & Michelson* (*John Wm. Thomas* and *Herbert A. Milliken, Jr.,* of counsel), for proponent.

*G. Leslie Field,* for contestants.

Bushnell, C. J. This will contest involves the sole question of testator William J. Nickel's competency. On November 28, 1934, when well-advanced in years, he executed a will containing the following:

"First: I will and direct that all my just debts and funeral expenses be paid in full, and that I expressly include as a just debt against my estate, monies which have been sent to me, the exact amount of which I do not know at this time, but which were sent to me by my two nieces, Nellie Adams and Elizabeth Adams of Fortworth, Texas.

"Second: I fully appreciate the services rendered to me and to my sister by my niece, Minnie Harrison, of Flint, Michigan, and I therefore give, devise and bequeath to my niece, Minnie Harrison of Flint, Michigan, all the rest, residue, and remainder of all my property, both real and personal, wherever situated, of which I shall die possessed.

"Third: I hereby appoint my niece, Minnie Harrison of the city of Flint, Genesee County, Michigan, executrix of this my last will and testament.

"Lastly: I hereby revoke all former wills by me at any time made."

In the former will which he revoked, the mother of Eva Whitlock, one of the appellants, was the residuary legatee.

The will contest was certified to the circuit court, where it was tried before a jury. At the close of the testimony the trial judge directed a verdict for

the proponent, Minnie Harrison, on the ground that there was not sufficient evidence of the testator's mental incompetency. Appellants contend that the trial judge erred in directing a verdict in favor of the proponent and in excluding certain hospital records and a probate file pertaining to a commitment action.

When contestants attempted to introduce the hospital records, the following colloquy ensued:

*"Mr. Field:* I would like to offer the notes of the nurse for the first week that Mr. Nickel was in the hospital.

*"Mr. Milliken:* That is objected to. * * *

*"Mr. Field:* In order to make the offer in proper form, on the record, I at this time would like to offer in evidence, subject to such objection as counsel wishes to make, the record which has been identified by this witness, from Hurley Hospital, in Case 102803, headed P. 1108.

*"Mr. Milliken:* I would at this time object to the production of the entire record, if the court please. It contains matters that are not material, and are hearsay. I don't want in the record that which doesn't belong there. * * *

*"Mr. Field:* I would like to offer Hurley Hospital daily progress sheets of this patient from 1/11/35 to 1/17/35, as being entries made in the regular course of conducting the hospital by the nurse in charge of the case.

*"Mr. Milliken:* If the court please, the record referred to, proposed to be admitted in evidence, contains several columns, and the extreme right hand column, under the heading, 'Remarks' by the nurse, are conclusions of this nurse, and are hearsay, and we are denied the right of cross-examination, and I object, if the court please, to the admission of that portion of the sheets under the heading of 'Remarks.' Perhaps if the court would look at it—

"*Mr. Field:*   Those are the only parts I am interested in, the part under 'Remarks.'

"(Paper handed to the court.)

"*The Court:*   Well, I think I will sustain the objection at this time until there is—see what other evidence is disclosed."

Appellants' claim of error is based upon the provisions of 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 14207, Stat. Ann. § 27.902), which provide for the admissibility in evidence of book entries and writings made in the regular course of business. Although not mentioned specifically therein, it has been held that this statute applies to hospital records. *Gile* v. *Hudnutt,* 279 Mich. 358; *Harvey* v. *Silber,* 300 Mich. 510; *Valenti* v. *Mayer,* 301 Mich. 551; *Harrison* v. *Lorenz,* 303 Mich. 382; and *Yager* v. *Yager,* 313 Mich. 300.

The admissibility, however, of hospital records under this statute is limited in nature. In the *Gile Case, supra, Palmer* v. *John Hancock Mutual Life Ins. Co.,* 150 Misc. 669 (270 N. Y. Supp. 10), was discussed in order to show the inadmissibility of such records with respect to the diagnosis of the patient's case, but that they are admissible to show the date of the entry and discharge, and the fact that the deceased was treated. Other limitations upon the admission of hearsay testimony, although consisting of entries on hospital records, were also imposed in *Sadjak* v. *Parker-Wolverine Co.,* 281 Mich. 84, and in *Valenti and Harrison Cases, supra.*

The court did not err in excluding that portion of the hospital record under the heading "Remarks" which contained merely hearsay statements.

The contestants offered in evidence the file of a probate proceeding in which the deceased was declared incompetent some 18 months after the execution of the will in question. This file was ex-

cluded because it pertained to matters not sufficiently proximate to the execution of the will.

The sole question here under consideration is the mental competence of the testator at the time the will was executed. The admissibility of testimony regarding subsequent events is solely within the discretion of the trial court. No definite time interval can be determined for all cases, as each must be governed by its own situation. The ruling of the trial judge was neither arbitrary nor unwarranted in the light of the facts presented. The mere fact, standing alone, that the testator was declared incompetent 18 months later does not of itself prove that he lacked sufficient mental powers to execute the will in question.

Appellants argue that the trial judge erred in directing a verdict in favor of the proponent. The facts on which this argument is based are summed up by appellants as follows:

"Where contestants' evidence in a will contest showed that during the year prior to execution of the contested will, testator, an elderly bachelor, became noticeably dirty in his personal appearance, irritable, argumentative and unable at times to carry on a connected conversation; that shortly before executing the will testator failed to recognize a friend of long standing and two nieces and was under the impression that his brother, with whom he had been in business years before and who had died in 1926, was still living, though testator had attended his funeral; and where it appeared that 44 days after the execution of the will testator was admitted to the psychopathic ward of a hospital where he was treated and a diagnosis of senile dementia made as to his condition; and where it appeared that testator was finally committed to a State hospital as an insane person and the testimony of qualified physicians who examined him confirmed the diagnosis of senile dementia and one of said

physicians testified that in his opinion testator was mentally incompetent to execute the will in question, was there a question of fact which should have been submitted to the jury for determination?"

There are, however, further facts. Dr. R. Gordon Brain, who attended Nickel beginning 44 days after the execution of the will, refused to say that the testator was mentally incompetent at that time, notwithstanding the fact that some 12 months later he made a diagnosis of senile dementia. Dr. Delbert MacGregor, who only saw the testator on one occasion some 16 months after the execution of the will, and who also made a similar diagnosis at that time, admitted that he could not say whether Nickel was mentally competent or not in November of 1934.

Hazel Nickel Brown, one of the nieces who claimed that her uncle did not recognize her, had not seem him for several years, but when she told him she was Hazel, she admitted that he did recognize her. Eva Whitlock, another niece, whom Nickel thought was his nephew's wife, had only seen her uncle occasionally after she moved from Flint to Detroit some 26 years prior to the time of trial.

Consideration of the entire testimony shows a case of a man who, after working hard at his trade of blacksmith the greater part of his life, finally became old and had the usual infirmities of age, forgetfulness, untidiness, et cetera, and who, 18 months after executing the will in question, was committed to an institution as a senile dementia patient. Such facts alone are not sufficient to set aside a will. As said in *Re Getchell's Estate,* 295 Mich. 681, 685:

"Mental competency is presumed. 3 Comp. Laws 1929, § 14212 (Stat. Ann. § 27.907). The burden of proof is upon contestants to show that the testatrix was mentally incompetent to make the will. *In re Curtis' Estate,* 197 Mich. 473, and *Brereton* v. *Estate*

*of Glazeby,* 251 Mich. 234. Weakness of mind and forgetfulness are not sufficient to invalidate a will if it appears that testatrix's mind was capable of attention and exertion when aroused and was not imposed upon. The weak have the same right as the prudent and strong minded to dispose of their property. If the testamentary capacity exists, the court will not undertake to measure its degree. *Schneider* v. *Vosburgh,* 143 Mich. 476."

See, also, *Lynch* v. *Doran,* 95 Mich. 395; *In re Cottrell's Estate,* 235 Mich. 627; *In re Briner's Estate,* 275 Mich. 396; *In re Rowling's Estate,* 291 Mich. 218; and *In re Grow's Estate,* 299 Mich. 133.

The lack of proof of testator's mental incompetence on or near the date of execution of the will in question, *i. e.,* November 28, 1934, was of itself sufficient to justify the direction of a verdict for the proponent. *In re Weber's Estate,* 201 Mich. 477.

The judgment is affirmed, with costs to appellee.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.