*In re* SHATTUCK'S ESTATE.

1. WILLS—WITNESSES.
   A will signed by only one attesting witness is invalid.

2. SAME—CONSTRUCTION OF INSTRUMENTS—CODICIL.
   An instrument which fails to identify a previous will may not be construed as a codicil thereto.

3. SAME—PETITION FOR PROBATE—CONSTRUCTION OF WILL.
   The construction of a will is not before the court on a petition to admit it to probate.

4. SAME—CONSTRUCTION OF WILL.
   What a named beneficiary takes under an instrument and whether the instrument disposes of the entire estate are questions of construction for determination after the will has been admitted to probate.

5. SAME—ADMISSION TO PROBATE—VAGUENESS OF BEQUEST.
   Fact that provision for only beneficiary named in will may be so vague and indefinite that testator's intention cannot be determined therefrom does not preclude will from admission to probate.

6. SAME—CONSTRUCTION OF PROVISION AS TO PAYMENT OF BILLS.
   Provision of instrument, presented as will for probate, "after all bills are paid" *held*, to amount to a direction for their payment.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  57 Am. Jur., Wills, § 287.
[2]  57 Am. Jur., Wills, § 605.
[3–5]  57 Am. Jur., Wills, § 777.
[5]  57 Am. Jur., Wills, § 782.
[7]  57 Am. Jur., Wills, §§ 91, 133.
[7]  Necessity of affirmative evidence of testamentary capacity to make prima facie case in will contest. 110 A.L.R. 675.
[7, 8.]  Prima facie case for proponent in will contest as shifting burden of proof. 76 A.L.R. 373.
[8, 9]  57 Am. Jur., Wills, § 89.
[10]  57 Am. Jur., Wills, § 133.
[11, 12]  57 Am. Jur., Wills, §§ 308, 882, 908.

7. SAME—MENTAL COMPETENCY—PRESUMPTIONS.

Mental competency to execute a will is presumed.

8. SAME—MENTAL INCOMPETENCY—BURDEN OF PROOF.

The burden of proof of showing mental incompetency on part of testator is upon those contesting admission of will to probate.

9. SAME—EXECUTION—MENTAL INCOMPETENCY.

Mental incapacity to execute a will must be established as of the time the will is made in order to invalidate it.

10. SAME—MENTAL INCOMPETENCY—BURDEN OF PROOF.

In will contest, evidence as to testator's mental incapacity to execute will at time it was executed *held*, insufficient to sustain contestant's burden of proof in such respect.

11. SAME—IMPEACHMENT OF ATTESTING WITNESSES ON COLLATERAL MATTERS.

Disallowance of a will from probate may not be had because attesting witnesses were impeached as to collateral matters or those not related to the execution of the will, where their testimony as to the genuineness of his signature remains unshaken and unimpeached.

12. SAME—ATTESTING WITNESSES.

A will duly executed by a testator may not be invalidated merely because those whom he asks to sign as attesting witnesses prove to be lacking in veracity.

Appeal from Ingham; Coash (Louis E.), J. Submitted April 7, 1949. (Docket No. 38, Calendar No. 44,359.) Decided May 18, 1949. Rehearing denied June 29, 1949.

In the matter of estate of Frank H. Shattuck, deceased, J. Clayton French presented purported last will of deceased for probate. Contest tried in circuit court pursuant to stipulation to certify contest to circuit court. Judgment for contestants. Proponent appeals. Reversed and remanded for entry of judgment for proponent.

*William H. Wise,* for proponent.

*Kelley & Seelye,* for contestants.

Dethmers, J. This is an appeal from an order disallowing a will in a contest certified, by stipulation, to the circuit court and tried before the judge without a jury.

The testator executed a will in February, 1946, invalid because signed by only one attesting witness. The instrument involved in this contest, dated March 15, 1947, reads as follows:

"March 15, 1947

"To Whom this May Concern

"At my death after all bills are paid and the will is read; I hereby give the remainder of my assets to Irene O'Conner.

"F. H. Shattuck

"Witnesses:
   "Ora J. French
   "Mrs. Roberta Henchert."

This second instrument, referred to by contestants as a codicil but urged by proponents as testator's last will, did not sufficiently identify the first will to incorporate it by reference. *In re Bresler's Estate,* 155 Mich. 567.

Four reasons advanced in the opinion of the trial court are urged by contestants as grounds for disallowance of the will. The first is that allowance of the second instrument as decedent's last will and distribution thereunder of the entire estate, after payment of debts, to Irene O'Conner would thwart testator's intent inasmuch as it appears from the face of the instrument that she was to receive only a remainder after certain devises and bequests made by some previous will to which this is but a codicil. The second ground asserted is that, by the same token, this so-called "codicil" does not provide for distribution of the entire estate. These contentions obviously involve a construction of the instrument. Construction of a will is not before the court on a petition to admit it to probate. *In re Clayton's Es-*

*tate,* 320 Mich. 152.  What Irene O'Conner takes under the will and whether it disposes of the entire estate are questions of construction for determination after the will has been admitted to probate.

Even though it be contestants' position that the provision for Irene O'Conner, the only beneficiary named in the will, is so vague and indefinite as to be void on the theory that the testator's intention cannot be determined therefrom, it does not follow that the will may not be admitted to probate.  The words "after all bills are paid" amount to a direction for their payment.  In the case of *In re Houghten's Estate,* 310 Mich. 613, 621, we held that despite the fact that the will was invalid as to bequests and devises, nevertheless "There remains to be accomplished under the will the appointment of the executor, payment of decedent's just debts and expenses of administration of his estate, and distribution of the residue under the provisions of the statute of descent and distribution."  The will was therefore admitted to probate.

Another ground asserted by contestants is mental incompetency of the testator.  The testimony of not only the attesting witnesses and members of Irene O'Conner's family, but, also, of other lay witnesses who, from aught that is shown by the record, must be termed disinterested witnesses, is that on March 15, 1947, the date of the "codicil," the testator was mentally competent.  Contestants' sole reliance in this connection is placed on the testimony of two doctors.  Sworn for proponents was Doctor Hurth who testified, in effect, that testator was mentally competent when he saw him a number of months prior to March 15, 1947; that on March 22d, one week after the date of the "codicil," testator had considerable mental disturbance which the doctor attributed to a stroke which he had been told testator had suffered the previous night; that he thought that on

March 22d testator had senile psychosis involving a change of personality and that such condition or change may take place in 24 hours as the result of a stroke; that the mental disturbance had increased a great deal by April 1st when he last saw testator; that he did not know what testator's condition was as of March 15th.

Doctor Toothaker, called as a witness for contestants, testified that he first saw testator on April 9, 1947; that he had not then diagnosed testator's condition but saw him again on April 17th and then diagnosed it senile psychosis; that testator's ability to transact important business was affected at that time; that during the interval between April 9th and 17th there was a tremendous change in testator's condition; that a woman living in testator's home (an attesting witness) told him on the occasion of his first call that testator had been perfectly all right until 4 to 6 weeks prior to that date and that on the basis of that information the doctor had, after testator's death on April 18th, signed a death certificate assigning the cause of death to be senile psychosis suffered for 6 weeks prior to death. Doctor Toothaker admitted that from his own observations he had not formed an opinion as to whether the testator had suffered from senile psychosis for a length of time and that from what he saw of testator it was possible that his mind might have been normal up to April 1st.

From the above it is apparent that there is no testimony that testator was mentally incompetent on March 15th when he executed the so-called "codicil," except that Dr. Toothaker projects testator's condition as he found it to be on April 17th back 4 to 6 weeks solely because of the statement made to him by one of the attesting witnesses that the testator had been perfectly all right until 4 to 6 weeks previous to April 9th.

Mental competency is presumed and the burden of proof rests on contestants to establish mental incompetency. *In re Grow's Estate,* 299 Mich. 133; *In re Walker's Estate,* 270 Mich. 33; *In re Curtis' Estate,* 197 Mich. 473; *Brereton* v. *Estate of Glazeby,* 251 Mich. 234.

"Mental incapacity must be established as of the time the will is made in order to invalidate it." *In re Getchell's Estate,* 295 Mich. 681.   (See, also, cases therein cited.)

Contestants have not sustained the burden of proof and the judgment of the trial court is, in this respect, against the great weight of the evidence, warranting a reversal. *Brereton* v. *Estate of Glazeby, supra.*   See, also, in this connection, *In re Nickel's Estate,* 321 Mich. 519.

Finally, contestants contend that the will should be disallowed because the attesting witnesses were impeached as to collateral matters or those not related to the execution of the will, and that the record amply supports the trial court's finding that the truth was not in them and his consequent rejection of their testimony as to the due execution of the will. In *Abbott* v. *Abbott,* 41 Mich. 540, this Court said:

"But we know of no rule of law which makes the probate of a will depend upon the recollection or even the veracity of a subscribing witness.   The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud.   But if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory."

The *Abbott Case* is followed in the cases of *In re Kennedy's Estate,* 159 Mich. 548 (28 L. R. A. [N. S.] 417, 134 Am. St. Rep. 743, 18 Ann. Cas. 892), and *In*

*re Connery's Estate,* 175 Mich. 544. In the instant case, contestants do not definitely challenge the genuineness of testator's signature on the "codicil." Three of contestants' witnesses contrast that signature with the one appearing on the earlier will. One of them testified, however, that he could not say whether it was testator's signature or not; the second testified that he imagined that it was; the third testified that at least one letter in the signature was the same on both instruments, but that the testator "never wrote with large, fat letters" (as on the "codicil") but that "they were tall, slender letters." Such testimony does not suffice to disprove the genuineness of testator's signature. The testimony of the attesting witnesses in this respect remained unshaken and unimpeached. A will duly executed by a testator may not be invalidated merely because those whom he asks to sign as attesting witnesses prove to be lacking in veracity.

Judgment reversed and cause remanded for entry of judgment directing that the so-called "codicil" be allowed as testator's last will and testament and remitting cause to the probate court for further proceedings accordingly. Costs to proponents.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.