337 Mich. 397 (1953)
60 N.W.2d 138
In re KUZAWA'S ESTATE.
KURZAWA
v.
BILSKI.
Docket No. 12, Calendar No. 45,829.
Supreme Court of Michigan.
Decided October 5, 1953.
*398 Dilley & Dilley, for proponent.
Fred Roland Allaben (Sam Ford Massie, Jr., of counsel), for contestant.
SHARPE, J.
The issue in this case is the validity of the last will and testament of Stanley Kuzawa. Prior to his death, deceased was a resident of the city of Grand Rapids, Michigan. He died October 2, 1951. Prior to his death, he had been a widower for approximately 25 years. Deceased's family consisted of 3 sons, Raymond Kuzawa, Seraphin Kurzawa and John Kurzawa, and 2 daughters, Martha Bilski and Lottie Tofel. The home consisted of 2 apartments. In September of 1938, John Kurzawa and his wife began living in the upper apartment. In 1942 Martha Bilski and family moved from the home of the deceased. After Martha Bilski and family moved from the home, deceased requested John Kurzawa to move downstairs and live with him, but before John Kurzawa and family moved downstairs, deceased had an attorney prepare a contract and will. This agreement and will were executed February 11, 1942, and provided for the care of deceased for a consideration mentioned in the will. In 1947 deceased took steps to cancel the above agreement. In 1949 a decree was entered terminating the above agreement, and on February 21, 1949, a receipt, discharge and release of any claim on the home was executed by John Kurzawa and wife. On December 11, 1948, deceased made a will in which he *399 devised his property to his 2 younger sons and his daughters, but the devise to his son John Kurzawa was the sum of $1. The 1948 will expressly revoked the 1942 will.
Following the death of deceased a petition was filed by the executrix appointed in the 1948 will asking admission in probate of said will. John Kurzawa filed objections to the admission of the will and also filed a petition asking that the 1942 will be admitted to probate. After a hearing in the probate court, the 1948 will was admitted to probate. John Kurzawa filed an appeal. The reasons given are as follows:
"A. That said purported will was not executed as required by law.
"B. That at the time said instrument was purportedly executed by deceased, said deceased lacked mental competency or capacity to make a valid will.
"C. That said instrument does not represent the will or desire of the said deceased but was induced by fraud and undue influence practiced upon said deceased.
"D. That the will of said deceased, dated February 11, 1942 and deposited in court herewith, is the last valid will and testament of said deceased and should be allowed as such."
Additional facts necessary to an understanding of the issues are as follows: The residence in question was the home of the family for approximately 20 years. In 1941 and 1942 deceased's 2 daughters moved out and established separate homes of their own. In the early part of 1942 Raymond and Seraphin Kuzawa were about to be called into the military service. About this time deceased entered into an agreement with John Kurzawa and his wife as hereinbefore related. In 1946 Raymond and Seraphin Kuzawa returned from military service and resumed living with their father. Gradually differences *400 arose between John and his wife and the 2 returned soldiers, which finally culminated in John Kurzawa removing all of his father's furniture from the house and storing it in the garage. As a result of this condition, deceased began an action to cancel his agreement with John Kurzawa and his wife. About a week after the suit to cancel the agreement had been submitted to the court for decision, deceased went to the office of Mr. Abner Dilley for the purpose of having a new will drawn. He was accompanied by Mrs. Catherine Radlicki and Mrs. Celia Gnidziejko, neighbors who had known deceased for more than 20 years. Deceased could not speak English and attorney Dilley could not speak Polish, hence the necessity of witnesses who could speak both languages. The contents of the proposed will were discussed and about 2 weeks later the same parties returned to attorney Dilley's office. Each of the ladies was handed a copy of the proposed will which was read to Stanley Kuzawa. He expressed his satisfaction with the provisions, and thereafter it was signed by him and by the 2 ladies and also Mr. Dilley in the presence of Stanley Kuzawa and each other. The cause came on for trial and a jury returned a verdict in favor of proponents.
Contestant appeals and urges that the trial court was in error in charging the jury as follows:
"It is the law of this State in every proceeding for the probate of a will, it is not necessary for the proponent, that is, in this case, that would be the daughter who is the executrix, in presenting the will of December, 1948, it is not necessary to produce any evidence to show the competency of the decedent to make the will, but the presumption of mental competency shall obtain as in other cases."
The statute involved is CL 1948, § 617.58 (Stat Ann § 27.907):
*401 "In proceedings for the probate of wills, it shall not be necessary for the proponent in the first instance to introduce any proof to show the competency of the decedent to make a will, but the like presumption of mental competency shall obtain as in other cases."
Mental competency to execute a will is presumed and the burden of showing mental incompetency on the part of the testator is upon those who contest the will to probate. See In re Shattuck's Estate, 324 Mich 568.
In our opinion the trial court was correct in giving the above instructions.
It is also urged that proponents failed to prove the deceased understood the contents of the purported will. Mrs. Catherine Radlicki testified:
"Sometime in the fall, I do not recall just what month it was, either October or November, Mr. Kurzawa came to my house. He said he wanted to make a will and wanted me to sign it. He said it was because I could speak both Polish and English. I told him I would do it.
"My sister-in-law, Mrs. Gnidziejko and I met Mr. Kurzawa in the lobby of the Michigan Trust Building and went up to Mr. Abner Dilley's office. Mr. Kurzawa spoke in Polish and said he wanted to make a will. I spoke in English to Mr. Dilley and told him that Mr. Kurzawa wanted to make a will. Mr. Kurzawa would tell us what he wanted and then we would tell Mr. Dilley, and he would jot that down, and then we would talk some more, and he would tell us some more, and then we would tell Mr. Dilley. As far as I know Mr. Dilley does not speak or understand Polish and Mr. Kurzawa did not speak enough English to be able to tell Mr. Dilley directly what to put into his will. That time we were there about three quarters of an hour. We all left together  my sister-in-law and I went home but I do not know where or how Mr. Kurzawa got home.
*402 "Sometime after that Mr. Kurzawa called on the telephone and said that we were to go to Mr. Dilley's office to complete the will. Again we met him in the lobby of the Michigan Trust Building and all went together to Mr. Dilley's office. Mr. Dilley gave us the will and we read it paragraph by paragraph. I asked him if that was what he wanted and he said yes. I asked him if he understood everything we were saying and he said yes. And so we read the whole thing through and after we were finished. Mr. Dilley, my sister-in-law, Mr. Kurzawa and I signed it, in the presence of each other."
Mrs. Celia Gnidziejko testified:
"In the fall of 1948, I don't remember exactly what month, Mr. Kurzawa called on me. He said he wanted to make a new will and wanted to know if I would be his witness. I asked him why he wanted me for a witness and he said because he knows I can speak both Polish and English. I said I would be his witness. I don't think Mr. Stanley Kurzawa could speak or read English.
"Some time after Mr. Kurzawa came to see me, my sister-in-law Mrs. Radlicki and I met Mr. Kurzawa in the lobby and went up to Mr. Dilley's office with him. We all sat down together and talked about what was to go in the will. Mr. Kurzawa would tell us what he wanted to go into it and then we would tell Mr. Dilley. Mr. Kurzawa spoke to us in Polish and we spoke to Mr. Dilley in English. We were there about an hour or three quarters of an hour. We left after we got through telling Mr. Dilley what to go into the will. Mr. Kurzawa did not go home with us. My sister-in-law and I went home by bus.
"The second time, my sister-in-law, Mrs. Radlicki, and I went down town by bus. We met Mr. Kurzawa in the lobby of the Michigan Trust Building. We then went up to Mr. Dilley's office. Mr. Dilley gave us the copy, and we would read paragraph by paragraph, and explain it to Mr. Kurzawa, and we would ask him whether that was the way he wanted it, and *403 he said yes, and after it was finished, he signed on each page, and then my sister-in-law signed and then I did, and then Mr. Dilley. * * *
"Q. Did you see Mr. Kurzawa often enough to form any judgment as to whether he was sensible and understood what was going on around him, and was able to manage his own affairs? * * *
"A. I think so. I think he was well enough and capable enough of everything he did. I think that he got to and from the downtown area in connection with the signing of this will and the preparation of it, by himself. He seemed to understand what was in the will at the time I explained it to him. I know he read Polish papers, I think they were weekly. I wouldn't know what paper they took. He talked about what was going on in the world as far as wars, politics and that sort of thing, and seemed to understand those things. Between 1947 and 1948 he fixed little different things around the home, I imagine  that needs tending to. I did not see him do any work on a garage to the rear of his home."
In our opinion there was competent testimony to submit to the jury the question of whether deceased understood what disposition he was making of his property.
It is also urged that the trial court erred in limiting the examination of contestant's witness, Anna Kurzawa, to matters subsequent to 1948 and refusing to permit her to testify to deceased's attitude and actions towards his children prior to 1948. It appears that the trial court limited the testimony of Anna Kurzawa to 1945, which date was prior to any serious family troubles. We have carefully read the testimony of Anna Kurzawa and find in it an absence of any evidence as to the mental condition of deceased. We find no error in the ruling of the trial court. The judgment is affirmed and the case *404 remanded with directions to admit the will to probate. Proponents may recover costs.
DETHMERS, C.J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.