340 Mich. 277 (1954)
65 N.W.2d 743
In re PADJAN ESTATE.
PAGEN
v.
BARKEY.
Docket No. 19, Calendar No. 46,133.
Supreme Court of Michigan.
Decided September 8, 1954.
Robert T. Stewart, for proponent.
Joseph Marvaso and Andrew J. Transue, for contestants.
Joseph & Joseph, for beneficiaries Hughes.
KELLY, J.
Joseph Padjan's will was offered for probate. Objections thereto were filed by Padjan's *279 son, Anthony Pagen, and grandson, Michael. The contest was certified to the circuit court for trial by jury. At the conclusion of plaintiffs' proofs, appellee made a motion for a directed verdict. The motion was granted, and plaintiffs appeal therefrom.
At about 7 a.m. on May 26, 1952, Joseph Padjan was taken to the emergency section of the Flint Hurley hospital and immediately placed under an oxygen tent. The will in question was signed by him about 2 p.m. on the day of entrance, after being prepared at the hospital by attorney Walter J. Barkey, executor and appellee herein.
The will, after providing for payment of debts, taxes and funeral expenses, devised and bequeathed Padjan's property as follows:
"All of my interest in a beer garden on Stewart Avenue, to Albert M. Hughes and Olive E. Hughes. The residue of my estate to be divided among all of my children living at the time of my death, except Thomas, my son. I do not want him to have any part of my estate."
Appellants contend that the court erred in directing a verdict because:
(a) The will shows upon its face that testator did not know the natural objects of his bounty; and
(b) Testimony of defendant and witnesses to instrument confirm incapacity of testator.
Appellants base their contentions upon the fact that at the time the will was signed testator had 2 living children, namely, Anthony and Thomas, and that the provision: "The residue of my estate to be divided among all of my children living at the time of my death, except Thomas, my son," disclosed that testator did not know the number of his children.
Testator was born in Yugoslavia and came to this country prior to 1909. He was unmarried at the time the will was signed, and also at the time of his *280 death in March, 1953. He had been married twice, divorcing his first wife, and his second wife predeceasing him. Two sons, Thomas and Anthony, were born by his first wife, and one son, Joseph, by his second wife. Joseph was killed in World War II. The record discloses that testator frequently referred to his grandson Thomas Pagen, Jr., as his son. Appellant Michael F. Padjan claims to be the son of Joseph; however, appellee contends this claim was not admitted in his answer to the objections and "cannot be assumed as a fact for the purposes of this appeal." The record discloses that this question was neither raised nor answered.
There is no challenge of testator's capacity either to conduct business or execute a will on any day of his life, except the one day, May 26, 1952, when he made his will. In this regard the statement of the court, which is not assailed, is significant:
"You have shown his capacity, shown he conducted his business up to the time he was taken to the hospital, and as far as the testimony shows, a few days later, he went out of the hospital and conducted his business again. The testimony shows he went out and bought an automobile, he drove it himself with his granddaughter and grandson."
Attorney Barkey testified that testator was very emphatic in his desire that his son Thomas not share in his estate, stating that Thomas had been a bad boy and he did not want him to get anything. John Burek, a witness to the will, an insurance man who had known testator for 6 years and often helped him translate his letters, reports and accounts, testified that he heard testator tell the attorney "to exclude Thomas Padjan." No testimony on this point was offered by plaintiffs, and, therefore, but one conclusion can be drawn  that at the time of preparing the *281 will the testator had very definite reasons why he felt his son Thomas should be excluded.
The record does not set forth what testator's estate consisted of, but it appears that the "beer garden on Stewart avenue" devised to Hughes was a major part of the estate. One witness who had approached testator with the thought of purchasing his business stated that testator "wanted around $40,000."
Attorney Barkey testified that testator told him "he wanted to have Mr. Hughes to have the business;" that "he wanted to give the bar to his old friends, Mr. and Mrs. Hughes." Mr. Burek confirmed this statement. Mr. Hughes was called as a witness for plaintiffs, and testified that he "took him (Mr. Padjan) into the emergency at Hurley Hospital." He said: "We had been partners for about 4 or 5 years before he died." There is nothing in the record to explain what is meant by the word "partners." A nurse testified that some days after the will was signed, and while testator was still a patient at the hospital, she asked him who was managing the beer garden while he was in the hospital and he told her "his partner."
George Orr, a witness for defendant, testified that he was visiting his stepfather at the hospital when he was asked, and agreed, to witness the will; that he heard the will read to the testator, and was present when testator signed it.
Irene Gibbs was a nurse at Hurley hospital the day the will was signed, and had been a practical nurse for 4 years. An objection was sustained to the question: "State whether or not Mr. Padjan had a heart attack?" When told by the court to tell what she observed, she stated that testator's color was white; that he was in an oxygen tent; that "he could hardly talk, and his breathing was so difficult. His breathing was deep gasps at intervals wide apart." *282 The court sustained an objection to a question as to whether she had an opinion as to testator's ability to execute a will.
Shirley Boettcher, employed at the hospital on the day the will was prepared, testified that she remembered Mr. Padjan as a patient and said: "He was very apprehensive, due to his condition. He was quite a sick man at the time. He was in an oxygen tent. By apprehensive I mean it was the fear he had that he could not get air."
Testimony was introduced by a friend of testator (and also by the friend's son) that when they endeavored to buy the tavern testator said he was going to give it to his grandson Tommy. The grandson's wife testified that she and her husband lived with the testator in 1945 and helped him run his business; that several times in 1950 testator "made it definite that he wanted the beer garden to go to Tom."
The fact that testator referred to his grandson as a son was testified to by the wife of the grandson. Mrs. Thomas Pagen, Jr., testified: "Grandfather always called him Tommy. Grandfather introduced him as his son. On one occasion my husband corrected grandfather because he was introduced as his son. His grandfather got quite angry about it. He made the remark he would introduce him as his son."
The residuary clause in question is drawn in such a way that it allows argument as to whom testator was referring in his use of the words "children living at the time of my death, except Thomas, my son." But that is a question for interpretation of the testator's language in an action construing the will.
The attorney who drew the will had never met testator prior to his visit to the hospital. Mr. Burek testified: "I have known Mr. Padjan for about 6 years and have seen him quite often, probably every 2 weeks. He had language difficulty. He wanted me to come over there and help him translate what he *283 used to get, in the way of letters, and in the way of reports and accounts."
Mental competency to execute a will is presumed and the burden of showing mental incompetency on the part of the testator is upon those who contest the will to probate. In re Shattuck's Estate, 324 Mich 568; In re Kuzawa's Estate, 337 Mich 397. Plaintiffs failed to meet this burden of proof and the record sustains the court's statement that: "There is no proof here under any circumstances that rises to the dignity of absolute proof of any undue influence or any incapacity on his part."
The court did not err in refusing to allow the nurse, Miss Gibbs, to express her opinion as to the mental capacity of testator. The nurse had not testified to any facts and circumstances which would tend to show any unsoundness of mind and, therefore, no foundation had been laid for receiving the opinion of the witness. See In re Wallace's Estate, 313 Mich 37.
Judgment affirmed. Costs to appellee.
BUTZEL, C.J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.