*In re* MERRILL'S ESTATE.

MERRILL v. MERRILL.

1. WILLS—TEST OF MENTAL CAPACITY.
   The test of mental capacity to make a will is that the testator must at that time have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty and to understand what the disposition is that he is making of his property by his will.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur, Wills, §§ 64–66.
[2] 57 Am Jur, Wills, §§ 128, 129, 146.
[2] Proper form of question to witness or of testimony of witness, as regards mental condition of person whose capacity to execute a will is in issue. 155 ALR 281.
[3] 57 Am Jur, Wills, §§ 112, 114.

2. SAME—MENTAL CAPACITY—EVIDENCE—QUESTIONS OF FACT.

Where it appears that at time testator executed will proposed for probate he was about 65 years old, that he had had syphilis for about 35 years, had mistakenly thought himself cured, had delusions as to ownership of a railroad and battleship, and a physician specializing in psychiatry, who based his testimony upon an examination of deceased 4 years after the will had been made and upon his hospital record, in answer to a hypothetical question testified that when the will was executed testator lacked mental capacity to make a will and proponent produced attorney-scrivener who testified that testator had mental capacity to make the purported will, a question of fact was presented as to testator's mental capacity at time of executing it.

3. SAME—MENTAL CAPACITY—EVIDENCE—HEARSAY.

In will contest wherein testator's mental capacity was in issue, it was not error for trial court to exclude testimony of proponent given at sanity hearing of testator some 4 years later wherein she stated that at the time of her marriage ceremony with testator she knew that he was not cured of syphilis, since such information was not within the knowledge of a layman and must have been based upon statements made to her by others, hence hearsay.

4. SAME—MENTAL CAPACITY—EVIDENCE—MISTAKEN BELIEF—BIGAMOUS SPOUSE.

In will contest wherein issue in probate court was whether or not testator had mental capacity to execute a will, the exclusion of testimony that will was void because executed by testator in the mistaken belief that proponent was his legal wife, that such was not the fact because at the time of the marriage ceremony testator was not cured of syphilis which he had had for about 35 years, and that proponent was living with another man in a bigamous relation at time of testator's death was properly excluded since such testimony, if true, had no relationship to the mental capacity of testator to execute the will (CL 1948, §§ 551.6, 554.321).

Appeal from Wayne; Ferguson (Frank B.), J. Submitted October 7, 1949. (Docket No. 47, Calendar No. 44,316.) Decided December 7, 1949.

In the matter of the estate of Ward E. Merrill, deceased. Lillian A. Merrill presented the last will

of Ward E. Merrill for probate. Frank E. Merrill objected thereto. Contest certified to circuit court. Directed verdict for proponent. Contestant appeals. Reversed and new trial granted.

*Maurice D. Sharai* and *William A. Flanigan,* for proponent.

*Edward N. Barnard,* for contestant.

SHARPE, C. J.   This is a will contest in which Frank E. Merrill appeals from a judgment in favor of proponent against himself as contestant, entered on a directed verdict for the proponent.

On October 28, 1947, Lillian A. Merrill, purporting to be the widow and heir at law of deceased, Ward E. Merrill, filed a petition for probate of his will. She and deceased's son, Frank E. Merrill, are named in the petition as the only heirs at law and the only devisees and legatees. Testator died on October 12, 1947, at the age of 72 years. The purported will was executed March 23, 1940.

On December 6, 1947, Frank E. Merrill filed objections to the allowance of the will giving as his reasons the following:

"5. That at the time the said purported will was claimed to have been executed on the 23d day of March 1940, the said deceased, Ward E. Merrill, was both physically and mentally incompetent to make a will.

"6. That at the time the said purported will is claimed to have been signed on the 23d day of March, 1940, the said deceased Ward E. Merrill, was not mentally capable of understanding the extent and nature of his property and the natural claim of his son, Frank E. Merrill, as a person entitled to his bounty.   *   *   *

"8. That at the time of the purported execution of the said will dated March 23, 1940, the said deceased,

Ward E. Merrill, entertained a mistaken belief that Lillian A. Merrill was his legal wife and that he was her legal husband, when as a matter of fact at the time of the purported marriage of the said Ward E. Merrill, to the said Lillian A. Merrill on the 11th day of April, 1935, the said Ward E. Merrill was, at the time suffering from a venereal disease,, the disease of syphilis, and had been suffering from said disease for a long time and had not been cured of the said disease, and the said purported marriage was and is void under the provisions of CL 1929, § 12691 (Stat Ann § 25.2) and CL 1929, § 12695 (Stat Ann § 25.6), and the said Ward E. Merrill would not have executed the said will if he had known that his marriage was void, and the said will is void in all respects and is invalid and should be denied to probate.

"9. That at the time of the death of the said Ward E. Merrill, the said Lillian A. Merrill, who claimed to be the sole beneficiary under the said purported will, was living with another person pursuant to her purported marriage, and in fact in a bigamous relation, and if the said Lillian A. Merrill had been legally married to the said Ward E. Merrill, because of her conduct in this regard, she would not be entitled to inherit any of his estate, right or interest whatsoever by way of dower, allowance, inheritance, distribution or otherwise, in the property of the said Ward E. Merrill, in accordance with CL 1929, §§ 12510 [13510?] 13511 (Stat Ann §§ 26.81, 26.82), and the said purported will would be and is void and invalid and should be denied probate for this additional reason."

The issues were framed and the contest was certified by the probate court, to the circuit court on December 8, 1947. There was a jury trial.

It appears that Ward E. Merrill, after the purported marriage to Lillian A. Merrill, made 2 wills prior to the one in question. The first will was dated August 9, 1935, and the second will was dated June

22, 1936. He entered into a marriage ceremony with Lillian A. Merrill on April 11, 1935. The last will was dated March 23, 1940. In June, 1944, Lillian A. Merrill filed a petition in the probate court of Wayne county claiming that Ward E. Merrill was insane. He was committed to Eloise Hospital where he died.

Proponent offered testimony to show that testator was employed as an engineer for the city of Highland Park as late as May, 1944. Testator and his second wife acquired a home on Windemere avenue, Highland Park, which they had improved and made into 6 apartments. He successfully purchased and sold real estate. He also toured with his wife, making his last trip in 1942.

Ralph H. Hayes, a witness for proponent, testified:

"My name is Ralph H. Hayes.

"*Q.* And you are an attorney-at-law?

"*A.* I am, and I have been an attorney-at-law for 36 years.

"I am a graduate of Detroit College of Law. I maintain my office at 13973 Woodward avenue, Highland Park, and live at 170 Moss avenue, Highland Park.

"*Q.* Do you recall about when you first became acquainted with Mr. Merrill?

"*A.* As near as I can recall, I would say around 1930. I handled various business transactions for him.

"*Q.* Now, I show you proponent's proposed exhibit 'A', alleged to be the last will and testament of Ward E. Merrill and Lillian A. Merrill, and ask you if you ever saw that document before?

"*A.* I did.

"*Q.* Does that document bear your signature?

"*A.* It does.

"*Q.* Now, can you tell us the circumstances of the signing of that will?

"*A.* Ward Merrill had talked a little previously to this—a few days previous, I believe, about making a new will, and on this day he came in and directed me how he wanted the will made; in the morning, I believe. I dictated the will to Miss Wass who was then my secretary; she drew it up and in the afternoon Mr. Merrill came in, looked over the will and I believe he made a small change here in paragraph 6. He then expressed himself as satisfied and said he would go get his wife. He left; came back in a little while with Mrs. Merrill. She also read the will over and expressed herself as satisfied. Then Mr. and Mrs. Merrill both signed the will in the presence of Miss Wass and myself as witnesses and declared it to be their last will.

"*Q.* Now, you had dealt with him, you say, before?

"*A.* I had. It is difficult to say the exact number of times, but I would say many times. He was quite a steady client.

"*Q.* Now, did he request you to sign that will?

"*A.* He did. I saw him sign the will. All four of us were present.

"*Q.* When you signed it and the other witness signed it, was that in the presence of Mr. and Mrs. Merrill?

"*A.* We all signed in the presence of each other. He declared that it was his will.

"*Q.* Now, from your knowledge of him and your business dealings with him, did you think he was mentally competent at the time to sign his will?

"*A.* I did."

Contestant offered evidence to show that Lillian A. Merrill first came into testator's life in October, 1934, shortly after the death of testator's second wife, and shortly thereafter, there was a marked change in the conduct and behavior of testator; that he wore louder clothes, bought a new automobile, ceased his life-long habit of church attendance, learned to dance, and started going to night clubs; that testator had delusions that he owned a railroad

and the battleship Missouri; and that about 35 years prior to the making of the will, testator contracted syphilis and was never cured of this disease although he thought he was.

Contestant introduced the testimony of Dr. B. B. Fair, a physician specializing in psychiatry, who based his testimony upon an examination of deceased in 1944 and upon his hospital record. In answer to a hypothetical question, Dr. Fair testified that at the date the will was executed (1940) testator lacked mental capacity to make a will.

At the close of contestant's case, proponent moved for a directed verdict admitting the will. This motion was granted. Contestant appeals and urges that the mental capacity of testator to execute a will in 1940 presented a question of fact which should have been presented to a jury.

Dr. Fair testified:

"Patient admits having had a syphilitic primary lesion at the age of 24 or 25. He says that he had very inadequate treatment, that he had some shots in the arms and hips over a period of three weeks. He says that he then turned to Christian Science, and that his syphilis was cured through this religious organization. He feels that he then got along very well until 8 months ago, when he began to feel nervous. At that time he says that he had a blood test done, and he alleges this test was negative for any evidence of syphilis."

The standard test of mental capacity for making a will is laid down *In re Walker's Estate,* 270 Mich 33, where we said:

"The test of mental capacity to make a testamentary disposition of one's property has been stated many times by this Court. In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is mak-

ing a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will."

See, also, *In re Johnson's Estate*, 308 Mich 366.

*In re Slepski's Estate*, 253 Mich 340, involved facts similar to those in the case at bar. We there said:

"The outstanding evidence of contestants is that testator had paresis, with attendant loss of brain and consequent impairment of mind, that its destructive processes are progressive over a rather long period, and that, in 1926, when the will was made, he lacked requisite mental competency. This evidence is chiefly from medical witnesses, some of whom had attended testator. There is, of course, conflict and inconsistency in testimony. Proponent had evidence tending to show mental competency, at the time in question. There is no escape from an issue of fact, and the verdict of the jury is not against the great weight of the evidence."

In our opinion the delusions of testator hereinbefore related and the testimony of Dr. Fair as to the effect of syphilis upon the brain after a period of years presented a question of fact as to the mental capacity of testator when he executed the purported will in 1940.

In view of the fact that this case is remanded for a new trial, we deem it advisable to discuss the following issues. It is also urged that the court was in error in excluding certain of the testimony of proponent given by her on a prior proceeding to adjudicate testator insane and to commit him to an institution. In considering this issue we have in mind that proponent, Lillian A. Merrill, was not a witness in the case at bar as her doctor certified that she was suffering from high blood pressure and coronary insufficiency and that it might be fatal to

require her to testify. The trial court excluded certain testimony of proponent in the insanity hearing wherein she testified that she knew positively when she married testator he had not been cured of the disease. In rejecting this evidence, the trial court said:

"That portion has been excluded on the grounds that it is not within the knowledge of a layman, and it must have been based upon statements made to her by doctors. And as far as she is concerned it would be hearsay. I cannot conceive of any knowledge on her part that she knew that he was not cured at the time of the marriage. So I will exclude that portion."

In the case at bar the principal issue was testator's mental capacity to execute a will in 1940, while the issue in the insanity proceedings was his mental condition in 1944. We are in accord with the reasoning of the trial court that proponent's testimony in the insanity proceedings was hearsay. We cannot conceive of a layman having the knowledge and ability to diagnose the disease of latent syphilis. It was not error to exclude this testimony.

It is also urged that the court was in error in refusing to permit the contestant to present evidence to the jury that the will was void as the testator executed the will in the mistaken belief that the proponent was his legal wife. This issue is based upon the claim that the marriage was void because the testator had syphilis at the time he entered into the marriage relation with proponent.

CL 1948, § 551.6 (Stat Ann § 25.6), provides, in part, as follows:

"No insane person, idiot, or person who has been afflicted with syphilis or gonorrhea and has not been cured of the same, shall be capable of contracting marriage."

It is also urged that the court erred in excluding testimony that at the time of testator's death, proponent was living in a bigamous relation with another man. This claim is based upon CL 1948, § 554.321 (Stat Ann § 26.1181), which provides:

"No person who, at the time of the death of the lawful husband or wife of such person, was or shall be living with another person, within or without the State, pursuant to a purported marriage, but in fact in a bigamous relation, shall inherit or take any estate, right or interest whatever, by way of dower, allowances, inheritance, distribution, or otherwise, in the property or estate, real or personal, of the deceased."

*In re Barney's Will*, 187 Mich 145, 164, the will of Oliver Barney was offered for probate. Objections were offered as to its validity. We there said:

" 'There is one main issue and only one, and that is whether the paper propounded is or is not a will.' * * * Neither in the circuit court nor in this Court can the issue properly triable in the probate court be enlarged."

In the case at bar the issue in the probate court when the will was offered for probate was, whether or not the testator had mental capacity to execute a will. When the cause was certified to the circuit court the issue was not changed or enlarged. The claims that testator executed the will in the mistaken belief that proponent was his legal wife and the claim that proponent was living in a bigamous relation with another man, if true, had no relationship to the mental capacity of testator to execute the will. The trial court was right in excluding this offered testimony.

For the reasons hereinbefore stated the judgment of the circuit court is reversed and the cause re-

manded for further proceedings, with costs to contestant.

Bushnell, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred with Sharpe, C. J. Boyles, J., concurred in the result.