327 Mich. 235 (1950)
41 N.W.2d 355
In re CARMAS' ESTATE.
CARSON
v.
KARAMANOS.
Docket No. 53, Calendar No. 44,521.
Supreme Court of Michigan.
Decided March 1, 1950.
Walter M. Nelson, for proponents.
George H. Heideman, George O. Hansen and Rottman, Siegel & Sugar (Albert A. Sugar, of counsel), for contestants.
CARR, J.
The question at issue in this case is the validity of the last will and testament of Sam B. Carmas. Prior to his death testator was a resident *237 of Wayne county. He entered the Henry Ford hospital in the city of Detroit on December 23, 1946, the hospital record indicating that he was at the time suffering from uremia, which ailment resulted in his death on January 23d following.
The instrument in question was executed in the hospital during the evening hours of January 15, 1947. By its provisions bequests were made to friends of testator with whom he had been closely associated, and a substantial portion of the estate was given to a sister in Greece. Directions were set forth in the will for the payment of debts and funeral expenses and a legacy to a certain church in the city of Detroit. Provision was further made for the establishment of a trust, a part of which was to be used for the building, or rebuilding, of a school in a designated village in Greece, and the remainder for the improvement thereof in the judgment of his trustees. Reference was made to 2 brothers of testator, it being stated in substance that testator did not wish them to have any of his property. The instrument was witnessed by the attorney who prepared it and by an employee of the hospital.
In proceedings instituted after the death of Carmas the brothers referred to in the will filed objections to its admission to probate on the ground of want of mental competency existing at the time the instrument was executed. The contest was duly certified to the circuit court where it was brought on for hearing before a jury. On the trial of the matter proponents offered the testimony of the subscribing witnesses to the will. The attorney who prepared it stated in substance that the testator gave directions as to the various provisions of the instrument, indicating by his statements and by his answers to questions that he was mentally competent at the time to understand the nature of the proceeding, the natural recipients of his bounty, the extent of his property, *238 and the disposition that he wished to make of it. Such testimony was corroborated to some extent by the other witness who indicated that the testator was responsive to questions asked him and was mentally alert. However, this witness was not present during the dictating of the will, being called in after the instrument was drafted for the purpose of attesting its execution.
Contestants' proofs consisted of the medical record of the hospital with reference to the condition and treatment of Carmas, the death certificate, and the testimony of a physician and surgeon, Dr. William Bromme, who was duly qualified as an expert in the practice of urinology. Dr. Bromme testified, in substance, that he had never seen Carmas but had examined the medical record of the case as kept by the hospital. Based on the information that he gained from such record, and also on his experience in his practice, he expressed the opinion that at the time of the execution of the will the testator was not in condition to transact business requiring the exercise of judgment, the reasoning faculties, and consecutive continuance of thought. It may be noted in this connection that the medical record contained certain statements that were obviously opinions on the part of the physicians or nurses making them, and the hypothetical question propounded to Dr. Bromme was objected to on that ground. The hospital record was offered as an exhibit but does not appear in the printed record on this appeal except as portions of it were set forth in the questions of counsel.
At the conclusion of contestants' proofs proponents offered the testimony of Dr. George S. Fisher, a specialist in internal medicine, who stated that he had had experience in the treatment of uremia and similar diseases, that he had examined the hospital record on which Dr. Bromme had based his opinion, *239 and that in his judgment a physician and surgeon, even though experienced in urinology, could not reasonably form an opinion from such record as to the mental competency of the testator on January 15, 1947. Following such testimony proponents moved for a directed verdict, which motion was taken under advisement by the court. Other witnesses were then produced, including Dr. Milton E. Klinger who was connected with the staff of the Henry Ford hospital during the time that Carmas was a patient there and who had examined and treated him during such period. Dr. Klinger made some of the entries in the medical record. Based on his recollection of the case and his notes in the record, he expressed the opinion that Carmas was competent to transact important business. The testimony of lay witnesses was also offered by proponents to the effect that during the period that he was in the hospital, from December 23, 1946, to the time of his death, Carmas was able to, and did, direct the conduct of his business, that he understood the nature of his affairs, and seemed to be mentally alert.
At the conclusion of the proofs proponents' motion for a directed verdict was renewed, and was granted by the trial court on the ground that the opinion testimony of Dr. Bromme could not be weighed against the proofs relating to the actual mental condition of Carmas at the time the will was executed. Contestants have appealed, claiming that the issue of mental competency should have been submitted to the jury and that the court was in error in directing a verdict.
The test of mental capacity necessary for the making of a valid will has been repeatedly recognized by this Court. In the case of In re Walker's Estate, 270 Mich 33, it was said:
*240 "In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will."
See, also, In re Getchell's Estate, 295 Mich 681; In re Merrill's Estate, 326 Mich 351. Under the statute there is a presumption of mental competency. CL 1948, § 617.58 (Stat Ann § 27.907). However, a verdict having been directed for proponents, the testimony must be viewed by this Court in the light most favorable to contestants. In re Lewandowski's Estate, 236 Mich 136.
A situation somewhat analogous to that in the case at bar was before this Court in Re Hallitt's Estate, 324 Mich 654. The question there at issue was the mental competency of a testator at the time the will was executed. There proponents' motion for a directed verdict was taken under advisement and the case submitted to the jury which found against the will. Subsequently a motion for judgment notwithstanding the verdict was made and was granted. In support of their claim that the trial court was in error contestants relied principally on the testimony of a medical expert who had not seen the testator, and who based his conclusion of mental incompetency on proofs that the testator was afflicted with senile dementia and arteriosclerosis. The judgment entered by the trial court was affirmed, it appearing from the proofs in the case, other than the opinion of the medical expert referred to, that the testator was mentally competent at the time he made the will. It was held that the opinion testimony given in answer to a hypothetical question was not sufficient to sustain the verdict of the jury. In reaching the *241 conclusion indicated the court cited with approval In re Aylward's Estate, 243 Mich 9, where it was said:
"The medical testimony for contestant, whether in answer to hypothetical questions or based on observation of testatrix months before the will was made, to the effect that testatrix was not competent to make the will at the time she did make it, is opinion evidence merely. What weight shall be given such opinions as against the otherwise uncontroverted testimony that testatrix actually dictated her will, that she alone directed the forming of each and every of its provisions? No weight, according to the cases. In Spratt v. Spratt, 76 Mich 384, frequently cited and approved, the following questions were answered as above answered:
"`But what weight is opinion evidence entitled to where it appears that, unaided by any one, he does in fact make a will disposing of all his property, dictating consecutively the bequests and devises he sees fit to make to a large number of relatives, near and remote? What weight or reliance should be given to the opinion of persons, interested or disinterested, professional or lay, to the effect that a person, who has in fact dictated a will disposing of all his property by successive bequests and devises, requiring consecutive thought and the exercise of memory, was unable to transact any matter of business which required for its completion several hours of time, recalling of various people and facts, or that he was mentally incapacitated to understand the nature and extent of his property, and the number and relation of those who were the proper objects of his bounty, so as to make a will devising his estate?'"
See, also, In re Ferguson's Estate, 239 Mich 616; In re Littlejohn's Estate, 239 Mich 630; Brereton v. Estate of Glazeby, 251 Mich 234; In re Vallender's *242 Estate, 310 Mich 359; In re Nickel's Estate, 321 Mich 519.
Counsel for appellants cite In re Lewandowski's Estate, supra; In re Dwyer's Estate, 251 Mich 346; and other decisions of similar import. In the Lewandowski Case the trial court directed a verdict for proponents notwithstanding the testimony of the attending physician to the effect that he found testatrix, on the evening when the will was executed and shortly prior thereto, in a state of coma due to the disease (diabetes) from which she was suffering, that she could not be aroused, and that a patient passing into such condition as a result of diabetes does not regain consciousness. This Court held that in view of such testimony the trial court was in error in directing a verdict for the will. Obviously the situation in the case at bar is not analogous.
In the Dwyer Case, supra, the Court recognized the rule stated in Re Aylward's Estate, supra, and other decisions involving the question, but held it not applicable because of the lack of showing that testatrix had dictated the provisions of the will. The attorney by whom it was prepared did not testify that he had drafted the instrument in accordance with directions given to him by testatrix. In the case at bar the attorney who prepared the will was, as before stated, a witness on the trial in circuit court and testified at some length with reference to the transaction. His testimony and that of the other subscribing witness was such as to indicate clearly that, at the time the will was prepared and signed, Carmas was mentally competent. The testimony of the other witnesses produced by proponents is of like tenor.
Under prior decisions of this Court, some of which are referred to above, the opinion testimony of contestants' medical expert, who had not seen the testator and who based his conclusion solely on the *243 medical record of the hospital interpreted by him in the light of his own experience, did not make an issue of fact for the jury. The trial court was correct in directing a verdict sustaining the will. Such conclusion is not at variance with the holding in Re Merrill's Estate, supra. There the testimony of the medical expert, offered as a witness by contestant, showed that he had examined testator, formed his own conclusions as to his condition at the time of the execution of the will, and based his opinion on the knowledge that he had of the case and its history. There was also evidence of delusions on the part of testator. The conclusion of this Court was summarized as follows:
"In our opinion the delusions of testator hereinbefore related and the testimony of Dr. Fair as to the effect of syphilis upon the brain after a period of years presented a question of fact as to the mental capacity of testator when he executed the purported will in 1940."
In accordance with such conclusion it was held that the issues in the case should have been submitted to the jury, and that the trial court was in error in directing a verdict for proponent. Obviously a different situation was presented in the Merrill Case than in the case at bar.
The judgment is affirmed, and the case is remanded to the circuit court for further proceedings. Proponents may have costs.
BOYLES, C.J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.